Good morning, your honors. David Carrico for Appellant Diaz. The crime in this case was smuggling eggs and not birds. Under the guidelines, the court determines the fair market value, of the wildlife smuggled, unless that can't be determined. In this case, the defense expert gave testimony that he would not pay more than 10% the price of a live bird for the eggs. So there was evidence in the record as to what the fair market retail value of the eggs were. Counsel, for this case, I guess what really influences me is how to review it. I thought the judge's way to review it, figuring 70% of the value of the birds on the basis of a 70% hatch rate if he took proper care of them, I don't agree with it, but I can't say it's unreasonable. On the other hand, Diaz's way, which is look at what people pay for other kinds of special birds' eggs compared to special birds, 10 cents on the dollar compared to a live bird, seems kind of reasonable to me. So if I can just impose my own judgment of what's reasonable, your argument is real attractive. But I don't know if that's right. Can we do that? Well, I think the determination of loss or value is independent review of the court. Are you saying it's de novo? Yeah, I'm saying how to calculate the loss or what formula to apply. Those are things that this court's in just as good a position as the trial court to do. I thought factual findings were for clear error. That's true. Factual findings are for clear error. Is this a factual finding? Well, not as clear. Even as to the application of the guidelines, it's abuse of discretion. That's true.  Well, because you're determining a method of calculating loss. It's not really determining a method. You're just trying to find the calculation of the market value, which is a factual finding. You're not interpreting any guideline. You're not trying to determine what the guideline is. You're just trying to determine what the facts are so you can apply the guidelines. I mean, that was my worry. My colleague got my question. Well, the big question is, even if I don't like what the judge did, if I have a clear error standard of review on factual findings, or I have an abuse of discretion standard on application of the guidelines to the facts, I'm stuck. Well, there was no fact in the record that supported a 60% to 70% hatch rate. There wasn't a fact. The court basically applied a theory to that, saying, well, he shouldn't get the value or benefit of his smuggling activity, so under that theory I'm going to apply a 60% to 70% hatch rate. Where did he get that 60% to 70%? The 60% to 70% hatch rate figure came from cross-examining. The court was actually asking the defense expert what would be your hatch rate under ideal conditions of natural incubation and parenting and all that. That's where she got that figure. Well, wouldn't that figure then be one indication of fact as opposed to the other that you mentioned that the expert said? Well, you've got two facts, really, two different ways of evaluating it, and he picked one. Suppose there were an expert that got up on the other side and testified, yep, this is a 60% to 70% is the appropriate hatch rate, and so the judge would then have to decide between those two. Well, there's two things. There wasn't really any basis for the court. There wasn't any basis for the court to apply an ideal. I mean, that's a theory, that they're going to apply an ideal hatch rate without even bothering to look at what the facts are with respect to this breeder in Austria. What did the expert say on cross-examination? Maybe you could tell us the page if you happen to be looking at it. Okay, well, there's two pages that are relevant here. Number one is that the expert gave a 5% to 10% hatch rate for eggs in a circumstance such as this, where the parentage is unknown and the origin is unknown, and that's at page 63 of the record. And then there was a 60% to 70% hatch rate given when the judge was cross-examining or questioning the expert. So there are two figures. My contention is, is the one that the judge, so the judge had 5% to 10% with eggs under these circumstances. I mean, I'm looking at 63 of the Murphy Direct, and I don't see the number. Am I looking at the right page? Oh, I see what you mean. So if you were buying an egg because of the fact that the chances of it becoming a bird were somewhere in the 5% to 10% range, because you don't know whether an egg is fertile, you're going to incubate it. You can't see inside the egg and tell whether there's a chicken there that's alive. Right. Okay. And where's the 60% or 70% come from? Let's see here. I was thinking. Page 74. Where is it? Page 74. 74? Right. I was thinking a lot of people having trouble having babies would be real happy if they saw a 70% shot. Right. Yeah, the court applied what it thought would be an ideal hatch rate without bothering to look at what the actual circumstances were. And the evidence before the court was that 60% to 70% hatch rate would not apply in this kind of circumstance. Let's see. I think what she says there, she says that if they're raised by their parents, kept in the incubators, fertility rate 70% or 80%, hatch rate 60% to 70%. Is that what you're talking about? That's right. Okay. So that would be like 60% or 70% of 70% or 80%? Right. Counsel? I didn't mean to interrupt you. So that would be 42% to 56%? Correct. Sorry. No problem. I interrupted you. As I read the testimony, the only value or the only testimony about the value of the eggs was the defendant's expert, saying they were equal to the value of Saker Falcon eggs, saying that he would not pay more than 10% of the value of the bird because of lack of knowledge concerning fertility and how it was handled. Yet he acknowledges this is just an opinion. He's never raised eagle owls. Is that correct? Yeah. If that's correct, then the best evidence I have of where you want to go, we don't even have somebody who's even been involved with eagle owls. We just have somebody who's talking about Saker Falcon eggs, and I may say that wrong because I don't know how to say Saker or Sacker or whatever it is, falcons. And the court seizes on evidence that she believes to be the best she can do under the circumstances, and if I look on clear error or abuse of discretion, I guess I'm wanting to know from you, how do I find that is one of those? Well, I think you could find clear error with respect to application of an incorrect fact. I mean, the hatch rate, the evidence for the court, there were two things. The experts said the hatch rate is 5% to 10% if you don't know, and then you've got in the amended pre-sentence investigation report you have quotations saying, well, this guy, this breeder was not getting a 60% to 70% hatch rate. He was getting 50% because they applied natural selection. Now, nobody bothered, unfortunately, to ferret that out, but that was before the court. So you didn't, you know, the judge didn't have a factual basis for applying. So that is clear error, even if you apply a clear error standard. Let me ask you a second question. You raised another one that the district court commits plain error engaged in permissible double counting. Where did you raise this issue before the judge? This particular point was not a basis of a specific objection. Oh, if you didn't raise it there, why have I got to look at it? Well, I guess the art. Give the poor district judge the chance to talk about it, then you're going to come up here and have me undo the sentence over it? Being a district judge formerly, I'm not real anxious about that. I can see that. Well, normally I wouldn't be anxious about that either. But in this case, the judge is taking something that neither side argued. You know, one side wants egg value, one side wants bird value for all the birds. And the judge says, well, I'm going to look at his purpose in evaluating what these are worth. So I would think that even if you apply a plain error standard, if the judge is saying I'm going to look at his purpose and then sees commercial purpose and zaps him for that too, that that should be enough for the judge to know. But the other point is that the objection was to evaluating market value based on purpose. If the judge hadn't done that, I wouldn't be making the argument about commercial purpose. So if that objection had been sustained, then there wouldn't be an argument. So there was an objection to that fact. Thank you, counsel. Counsel. Good morning. May it please the court. Stacey Person on behalf of the United States. This case is about the valuation of the eagle owl eggs that Mr. Diaz smuggled. Help me with something here. Yes. As I remember our MOV book, or whatever color our standards of review book is right now, it cites cases to say if it's a mixed question of law and fact, we review it de novo. I've never approved of that. I've always thought it should be abuse of discretion, but we follow precedent. And if it says de novo, it's de novo. And then you say at page 15 of your brief that the issue of market valuation presents a mixed question of law and fact, which would seem to mean that we take our own shot at deciding what a dozen eggs are worth. Well, Your Honor, what ---- Out of value. I guess we don't decide what a dozen eggs are worth. We decide how to value a dozen eggs. Your Honor, I'm sorry. I'm trying to flip to my standards of review section. It's page 15 of your red brief. Thank you. And you don't have the last sentence of the paragraph. The last sentence of the paragraph doesn't exist. It would say the court reviews mixed questions of law and fact, de novo, abuse of discretion, clearly erroneous, whatever. But this case ---- I think the true answer is de novo. Your Honor, this case really comes down to a question of the discount rate that the court applied here, which, in fact, is a factual question that's reviewed for clear error. Why would that be a factual question? That's a factual question because the district court was choosing between applying a lower discount rate than Mr. Diaz's counsel urged and the 60 to 70 percent hatch rate that was also testimony from Mr. Diaz's own expert as to what the ---- If it's clear error, the case is over. You win, I think. Yes. But I don't understand why it's clear error, and I don't see where you show me that. It's clear ---- I mean, I could see ---- Number one, it's a ---- Did he have 15 eggs or did he have 9 eggs? How many eggs did he have? But that's not an issue. I think there could also be a reasonable argument made that the question here is an application of the guidelines to the facts, which would be an abuse of discretion standard. Well, I thought it was de novo, so tell me which case says it's abuse of discretion. Well, Your Honor, the question of market value of eggs is one of first impression for this court. So this court hasn't said exactly which standard of error would apply in this particular ---- What standard of review to use for mixed questions of law and fact? And you say it's abuse of discretion. My vague recollection, which could very well be an error, is de novo, and I just want to know what's right. Well, my understanding, Your Honor, I respectfully disagree with you that a mixed question of law is de novo. My understanding is that when there's a mixed question ---- Oh, I didn't say question of law. A mixed question of law and fact. I'm looking at page 15, line 1, 2, 3, 4, 5 of your brief, where you characterize the issue of market valuation, which is what we're doing here, as a mixed question of law and fact. And then you don't have what I would expect the next sentence to be, which is what our standard of review is for mixed questions of law and fact. So I just want the citation and a standard. My understanding is that where there's a mixed question of law and fact, the legal issues are reviewed de novo. The factual questions are reviewed for clear error. If this case presented a mixed question of law and fact, I believe that would be the standard. I think what comes to light more in this case, what's really at issue, what the defendant is really disputing here, is more of the factual question of did the district court apply the proper discount rate. I think the law under Kelly is that the district judge has to be reasonable. Yes, and that goes actually to the language of the sentencing guideline itself, which says where the market value shall be based on fair market retail price. This is Application Note 4 to Guideline 2Q2.1. Okay, why is the judge reasonable? The judge was reasonable here because the discount rate that the judge used, the 60 to 70 percent, is an objective measure. It's not what the expert says. The expert says, you know, not all eggs are fertile. There has to be sex between the two little birds for the eggs to get fertilized. And some of the sex doesn't fertilize the eggs. And then once they're fertilized, some of them still don't hatch chicks. So the expert says at page 74, which I guess this really is a birds and the bees argument, the expert says at page 74, if the eggs were raised by the parents and then kept in the incubators where they were, I guess the fertility rate would be somewhere around 70 or 80 percent. That's the successful sex that leads to fertilized egg. And then the judge asks, and how about the hatch rates, 60 percent, 60 to 70 percent, maybe a little higher. Well, if that's what the judge is basing his 60 or 70 percent on, then it's just flat-on reasonable because it's not what the witness said. The witness said 60 or 70 percent of 70 or 80 percent, and that's under conditions contrary to the facts here. No, Your Honor, I respectfully disagree. The witness, if you look before that, the witness makes clear that the 60 percent is not 60 percent of the number of fertile eggs. It is 60 percent of the total number of eggs. And that is on page 73, one page before where you were looking. The expert gives a numerical example. Toward the bottom of that page, the expert says, well, the court actually asked the question, when you are talking about a hatch rate, you are talking about it based upon the number of fertility eggs or the number of eggs altogether. And the witness says, right, which if you stop there, that doesn't really give us a lot. But he continues, and he says, on the chart I put together, just to make it somewhat simple, of 40 eggs laid, I think something like 25 were fertile, and of that, 22 hatched. So we have there 22 of- It's not 60 or 70 percent. No, and he says I'm not looking- 60 to 70 percent of 70 to 80 percent. Well, Your Honor, he says here I'm not looking at the numbers. He didn't have the chart in front of him, but he was giving a numerical example to help the district court understand. His example is what the blue brief says. It's not what the judge said. His example is that 22 of a total number of eggs hatched, and then he goes on the next page to say that the precise hatch rate is 60 to 70 percent, which would be of the total. If I follow what the witness said at page 73, I just did the arithmetic, and it's 55 percent. It's not 60 or 70 percent. I mean, what you just told me to read at page 73, if I just do the long division, I get 55 percent. Right, and that's because he wasn't looking at his chart. He didn't have the exact figures in front of him. He was trying to give an example. Show us the chart, then, in the excerpts, and show us where he's wrong. The chart is not in the excerpts, Your Honor. The key about this. Are we supposed to say the judge was reasonable, not based on any of the testimony we have, but on something we don't have? Your Honor, the judge asked the witness a series of questions on these pages to ensure that the district court understood what the witness was testifying, and the district court had that witness in front of her and was asking questions to be clear about the testimony. And I think it's reasonable here that the judge properly interpreted the testimony to be that the hatch rate is 60 to 70 percent of the total number of eggs, and that is the number. Show me where anywhere in the record there is any evidence to support a 60 or 70 percent hatch rate. Your Honor, it's the pages in the transcript that I've been discussing. And if I may make a further point about why this hatch rate is, why it was reasonable for the district court to impose this hatch rate as the discount rate, it's because it's an objective measure. And market value, the purpose of that provision, is to reflect the seriousness of the crime. And so the facts in particular circumstances, such as how many eggs Mr. Diaz was actually able to hatch, that's irrelevant to the determination of market value. What we're looking at here is what a reasonable person might pay for these eggs. The only evidence I saw in the record of market value was $0.10 on the dollar. No, Your Honor, that evidence is in these conditions. If the eggs weren't properly incubated, if they hadn't been taken away from their parents too early, if all of these poor conditions hadn't been caused by the smuggling, then maybe I would only pay $0.10 on the dollar. That's not an objective situation. That doesn't measure the seriousness of Mr. Diaz smuggling these 12 eggs into the United States. Whose burden of proof is it to show the market value? That's the government's burden, Your Honor. And whose expert was this that was produced? This testimony came from the defendant's expert, and what the United States had urged was that the eggs should be valued at the same amount as a live bird. The district court rejected that approach and instead reasonably used this other approach, which this was a reasonable methodology for her to use and was within her discretion to do that. So if it hadn't been for the defendant's expert, the government couldn't have carried this burden of proof. Your Honor, I can't say that. If this expert hadn't testified, who is to say the district court wouldn't have equated the value of the eggs with the value of a live bird? I thought you said the judge did not do that. The judge did not do that based on the evidence that was before her in this case. That's one thing that troubled me. It seemed peculiar that the whole value is based on the cross-examination of the defendant's witness. And, Your Honor, that's one reason that we would submit that what the district court did here is very reasonable because she relied on testimony by the defendant's witness and actually followed the methodology that the defendant urged the district court to follow at the sentencing hearing. And would the court like me to speak at all about the double counting? I think we've used up your time. Thank you. I would have to comment that in 30 years on the bench, this is the first time I've ever been involved with importation of eggs. It's an interesting case, Your Honor. Thank you. Thank you, counsel. U.S. v. Diaz is submitted. We'll hear Koppel v. Estrella and Rice. That's my first words on the B's case. What? My first words on the B's case. Yes. Counsel? Good morning, Your Honor.
judges: Hug, Kleinfeld, Smith